IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| LADDER PROPERTIES LLC, a Washington limited liability company | No. 88063-2-I |
| Appellant, | DIVISION ONE |
| and | PUBLISHED OPINION |
| FIONA SOILEAU, an interested party, | |
| Plaintiff, | |
| v. | |
| THE CITY OF SNOQUALMIE, a political subdivision of the State of Washington, | |
| Respondent, | |
| and | |
| JAIRUS WOOD AND MALIA WOOD-RODRIGUEZ, individually, | |
| Defendants. | |

COBURN, J. — Since 1940 a single property in Snoqualmie, Washington contained two residential structures: a house located in the front of the lot and an accessory dwelling unit (ADU) in the rear of the lot. At the time that Ladder Properties, LLC, purchased the property in early 2022, the ADU had been rented and occupied for more than 20 years. After Ladder Properties converted the two residences into condominium units in late 2022, Jarius Wood and Malia Wood-Rodriguez purchased the

front residence as first-time homebuyers and Fiona Soileau bought the ADU in her search for affordable housing. Following a hearing on the parties' cross-petitions under the Land Use Petition Act (LUPA), King County Superior Court agreed with the City of Snoqualmie that Ladder Properties and the homeowners violated the City's zoning code and water and sewer codes, not because of any physical changes to the property but based on the property's conversion into a condominium-form of ownership. The remedy, according to the City, is to dissolve the condominium association.

In a matter of first impression, we hold that the City's version of code enforcement amounts to a prohibition on the ownership of an ADU as a condominium unit that violates state law under the Washington Uniform Common Interest Ownership Act (WUCIOA), chapter 64.90 RCW, and the Growth Management Act (GMA), chapter 36.70A RCW. In all respects, we reverse the superior court's judgment dismissing Ladder Properties' LUPA action. We reverse the hearing examiner's decision affirming the zoning code violation and reinstate the hearing examiner's decision to not uphold the sewer and water code violations as cited.

FACTS

Around March or April 2022, Ladder Properties purchased a residential parcel, referred to hereinafter as "the property," in Snoqualmie, Washington. The property contained two residences: a one-story house located in the front of the lot and an ADU located in the rear of the lot. The one-story house was built in 1931 and the ADU was built in 1940. The ADU had been rented and occupied as a residence since at least 1990. The residences share a single side sewer line and a single water meter with one water service connection.

The property is in a residential constrained district (R-C) zone under the City of Snoqualmie Municipal Code (SMC). The City's zoning code provides for residential districts "to allow for different types, sizes and price ranges of high quality residential uses." SMC 17.15.010. The code defines an R-C zone as a "[l]ow-density single-family detached residential district …. characterized by large parcels subject to significant environmental constraints and lack of adjacent sewer service." SMC 17.15.020(D). Properties within the R-C zoning designation are within the city's floodplain and floodway and are susceptible to flooding. The R-C zone does not permit multifamily dwellings. SMC 17.55.020, Table 1.2. "Multifamily" is defined as a building containing two or more dwelling units. SMC 17.10.080.

SMC 17.15.040(D)(1) states that "[e]xisting legal lots created prior to the establishment of the R-C district can be developed with one single-family dwelling, but cannot be further subdivided." The code also permits an R-C zone to have up to two ADUs attached to or detached from the single-family residence (or "principal dwelling unit"), subject to certain design and size requirements. SMC 17.55.020, Table 1.1.2; SMC 17.55.070. "Single-family" is defined under the code as "a detached dwelling unit, other than a mobile home, containing one dwelling unit." SMC 17.10.110. An ADU is "a dwelling unit on the same lot or in the same building as a single-family dwelling unit, duplex, triplex, townhome, or other housing unit which is the principal use of the lot." SMC 17.10.020. When a single-family housing unit is on the same lot as an ADU, the code refers to the single-family housing unit as the "principal unit." SMC 17.10.095. "Use" is defined as "the nature of the occupancy, the type of activity, or the character and form of improvements to which land is devoted or may be devoted." SMC

17.10.120. "Principal use" or "primary use" is "the use for which a lot, structure or building, or the major portion thereof, is designed or actually employed." SMC 17.10.095. "'Accessory use' means a use incidental and subordinate to the principal use and located on the same lot or in the same building as the principal use." SMC 17.10.020.

It is undisputed that at the time of Ladder Properties' purchase, the property complied with permitted uses under the R-C zoning designation. After buying the property, Ladder Properties renovated the two residential units, including painting and installing new appliances and floors. Ladder Properties did not make any structural changes to either unit and did nothing to the property's preexisting water or sewer lines. Ladder Properties tried to sell the renovated units to a single buyer but was unsuccessful.

Around October 2022 Ladder Properties converted the two residential structures into condominium units by recording relevant documents, including a condominium declaration and survey map, with King County. The declaration granted the owner of each unit a 50-percent interest in the common elements. The survey map identifies the front residence as "Unit A" and the rear residence as "Unit B."

In April 2023 Ladder Properties sold the rear residence to Fiona Soileau. The following month Ladder Properties sold the front residence to the Wood-Rodriguezes.[1]

In July 2023 the Wood-Rodriguezes had some plumbing issues, which involved issues with their shower drains not draining properly and toilets backing up. They contacted the city after discovering that there was a separation between the side sewer

---

[1] This opinion refers to Jarius Wood and Malia Wood-Rodriguez, a married couple, as the Wood-Rodriguezes consistent with the hearing examiner's findings.

pipe that connected to the main city sewer line. City wastewater supervisor Tom Holmes requested assistance from city community development director Emily Arteche to determine whether the rear residence was a condominium unit or an ADU to address possible code violations.

On February 22, 2024, the City of Snoqualmie issued a "Notice of Code Violation and Order to Cease and Desist Violations" against the property.[2] The notice alleged that the filing of the condominium declaration created two separate dwelling units in violation of the zoning code under SMC 17.15.040(D)(1). The notice also alleged sewer code violations under SMC 13.04.160(A) and SMC 13.04.120 and a water code violation under SMC 13.12.020(A).[3]

As to the zoning code violation under SMC 17.15.040(D)(1), the notice stated the property is:

> located within the R-C zone. SMC 17.15.040.D.1[4] states, in part, "Existing legal lots created prior to the establishment of the R-C District can be developed with one-single dwelling, but cannot be further subdivided." In the R-C Zone, single-family dwellings and accessory dwelling units ("ADUs") are permitted but "multiple-family dwellings" are not permitted. SMC 17.55.020, Table 1.1.2. Filing a Condominium Declaration creating two separate dwelling units (Unit A and Unit B) is in violation of the SMC 17.15.040.D.1.

(Boldface omitted.) The notice stated that "[z]oning code violations render the responsible parties subject to penalties of $250 per day until corrected" under SMC 17.05.100(E).

As to the sewer code, the notice, citing SMC 13.04.060(A), stated:

> [T]he owner of a lot containing residential structure(s) abutting any street in which there is located public sewer within 150 feet of the lot, is required

---

[2] The notice was addressed to Ladder Properties, Soileau, and the Wood-Rodriguezes.
[3] The notice also alleged building, mechanical, and plumbing violations, which the hearing examiner did not uphold and are not at issue in the instant appeal.
[4] Though the notice varies in its style of citation to the city code, it is undisputed which specific regulations are referenced in the notice.

to install "suitable toilet facilities therein and to connect the facilities to the public sewer." SMC 13.04.060(A). All connections must be made "in a permanent and sanitary manner, and shall be sufficient to carry all the sewage and waste and waste fluids of every kind from the house" to the sewer. Id.

In regard to the specific sewer code violations under SMC 13.04.160(A) and SMC 13.04.120, the notice stated:

> (1)    Currently, a single side-sewer connection serves both Unit A and Unit B in violation of SMC 13.04.160(A), which requires a single side sewer to be provided for every building unless a single side sewer is approved by the City prior to construction of such side sewer. According to complaints received by the City, the sewer line as currently constructed lacks capacity to serve both dwelling units.
>
> (2)    No side sewer permit was obtained for a single-side sewer, in violation of SMC 13.04.120.

The notice also explained that the water code violation under SMC 13.12.020(A) was based on the fact that "[t]he two units share a single water meter, in violation of SMC 13.12.020(A) which requires all residences to be separately metered." The notice referred to penalties for the water code violation under SMC 13.12.900(A)(1):

> Making a connection to the City water supply system other than under the supervision of the public works department, or without paying the connection charge, is unlawful and punishable as a misdemeanor subject to a penalty of $1,000.00 and/or imprisonment for 30 days in accordance with SMC 13.12.900(A)(1). Each day of violation constitutes a separate offence. The unlawful water connection shall also result in a disconnection from the municipal water supply system, and reconnection is prohibited until the connection charge has been paid.

(Boldface omitted.)

Ladder Properties and the Wood-Rodriguezes separately appealed the notice to the City's hearing examiner. The hearing examiner held a joint hearing on June 20, 2024. Arteche, the city community development director, testified on behalf of the City for the cited zoning code violation under SMC 17.15.040(D)(1). Arteche testified that the

6

zoning code did not permit two single-family dwelling units on the same property in an R-C zone. She considered two single-family units on the same property to constitute a multifamily use in violation of the zoning code regardless of whether either unit met the definition of a multifamily dwelling under the code. According to Arteche, Ladder Properties' conversion of the front and rear residences into separately owned condominium units transformed the ADU from a residence subordinate or secondary to the front residence into a second "primary" dwelling unit in violation of R-C zone use limitations.

Arteche stated that, under the zoning code, the use for both a primary residence and an ADU on the same lot was a "residential use[ ]." When asked to explain when an ADU no longer constitutes an ADU, Arteche answered, "when the primary unit no longer exists" and "[w]hen there's no primary unit, there is no accessory unit." Arteche acknowledged that condominiums are not listed on the list of prohibited uses for properties within the R-C zone under SMC 17.55.020, and that the city code "doesn't have a provision saying that the city needs to sign and review a declaration of a condominium." See SMC 17.55.020, Table 1. Arteche conceded that the property owners did not request to subdivide the land through "a subdivision process." Instead, Arteche said, it was Ladder Properties' act of "filing a condominium declaration" that "created two separate dwelling units" in violation of SMC 17.15.040(D)(1). Arteche testified that if the property had remained under "one ownership" rather than converted into a condominium, there would not have been any zoning code violations. According to Arteche, the remedy for the zoning code violation is to "[d]issolve the condominium association and convert the property back to a primary, and [ADU]."

7

City wastewater supervisor Tom Holmes testified to the cited sewer code violations. Holmes based the cited violations of SMC 13.04.160(A)[5] and SMC 13.04.120,[6] on his assumption that the two residences on the property shared a four-inch sewer line, which he explained was not adequate for condominium units or for two single-family residences. Holmes did not know what sewer facilities currently existed on the property and if they were adequately sized. According to Holmes, Ladder Properties' filing of a condominium declaration altered the side sewer by changing its physical use from one owner to two owners, which required Ladder Properties to obtain a permit to connect the rear residence to the municipal sewer utility under SMC 13.04.100.[7] The City submitted an email from Holmes dated July 21, 2023, stating that the property did not need an additional sewer connection "if one person owns the whole thing."

In support of the water code violation under SMC 13.12.020(A), city building official John Cooper testified that though the property's current three-quarter-inch water meter satisfied the requirement for a single-family home and an ADU under the code, it would not be sufficient for two single-family dwellings if there were four or more toilets or plumbing fixtures. Cooper had never been inside either of the residences to verify the plumbing fixture count before the property was converted into a condominium ownership structure. The City submitted King County property records from 1959

---

[5] SMC 13.04.160(A) states:
A single side sewer shall be provided for every building unless the connection of more than one building to a single side sewer is approved by the utilities director prior to the construction of such side sewer. Nor more than one multiple dwelling, industrial, or commercial building shall be connected to a side sewer, unless otherwise approved by the utilities director.
[6] SMC 13.04.120 provides procedural requirements for obtaining side sewer permits.
[7] SMC 13.04.100 states, "No person other than representatives of the city shall uncover, make connections with or opening into, use, alter, or disturb any public sewer or appurtenance thereof without first obtaining a written permit from the clerk."

showing that the front structure had one bathroom and the rear structure had one full bathroom. Ladder Properties offered photographs of the property prior to its purchase in 2022 that showed two toilets in the front structure and one toilet in the rear structure.

During cross-examination, Cooper testified that the mere fact that multiple owners were created through a condominium conversion was not sufficient to show a violation of the water code. He later stated on redirect that the conversion of the rear unit into a condominium unit rendered it a separate single-family dwelling that required an additional water meter and separate water connection under SMC 13.12.020(A). Cooper added on recross, "The only time that there would be a separate water meter is if the back unit remains as a single family residence. The main residence and … an ADU is allowed to be on one water connection." An email sent by Cooper to the Wood-Rodriguezes on November 27, 2023, stated that the property's homeowner's association must be dissolved to resolve the water code violation.

Cooper also testified as to the citation for water code penalties under SMC 13.12.900(A)(1),[8] which declares unlawful "[m]aking any connection to the municipal water supply system other than under the supervision of the public works department, or without paying the connection charge." The provision provides that such violations are "punishable as misdemeanors subject to a penalty of $1,000 and/or imprisonment for 30 days" and "[e]ach day of violation shall constitute a separate offense." SMC 13.12.900(A)(1). Cooper testified that Ladder Properties did not make any connection as defined under the provision and was thus not in violation of SMC 13.12.900(A)(1).

---

[8] SMC 13.12.900 has been amended since the hearing examiner's decision. See Snoqualmie Ordinance 1305, § 1 (2025). Because the relevant language under subsection SMC 13.12.900(A)(1) remains unchanged, we refer to the current version of the provision.

Cooper attributed the addition of the alleged violation to the city's legal department, stating, "I would also like to say that this was an added violation by the city attorney in the letter."

In defense, Ladder Properties asserted that the City's code does not contain any provisions that prohibit a principal dwelling and an ADU on the same lot from being owned by different owners. Ladder Properties also argued that the purported code violations for the property's condominium conversion flout state law, asserting that RCW 64.90.025(2) bars the City from prohibiting the separate ownership of the ADU under a condominium ownership structure and that the City cannot prohibit the sale of the ADU as a condominium unit under RCW 36.70A.681(1)(k).

On August 12 the hearing examiner issued its findings, conclusions, decision, and order affirming the zoning code violation and reversing the sewer and water code violations. As to the zoning code violation, the hearing examiner noted the City's stipulation that "the prior use of the front unit as a primary residence and the rear building as an [ADU] was legal ... under the current zoning code." The hearing examiner's ruling did not directly address the state statutes raised by Ladder Properties and instead deferred to the City's interpretation of what constituted a "primary" use under the local zoning code. Observing that the cited violation of SMC 17.15.040(D)(1) was predicated on the recording of the condominium declaration that created two separate dwelling units on the property, the hearing examiner found:

> In hearing testimony, it was clarified that it was the code interpretation by the Community Development Director that recording a declaration of condominium, segregating ownership of the two structures and the area of the subject property under the control of each unit, rendered neither structure principal and thus neither subordinate, resulting in a condition in which the R-C zoned property contains two single-family residences, each

of which is a principal or primary use of the property, inconsistent with the zoning code. Of note, condominium is not defined in SMC Title 17 and is not referenced in SMC 17.10 definitions of multifamily or single-family. … [T]he zoning code is ambiguous as to the effect of recording a declaration of condominium on an R-C zoned parcel that contains a residence and an ADU. … With respect to the zoning violation, the interpretation of the Community Development Director is entitled to deference. Considering this deference, the alleged violation of [SMC 17.15.040(D)(1)] has been shown to have resulted from the action of Ladder Properties LLC.

(Footnote omitted.)

Regarding the sewer code violations that stemmed from the residential units' shared use of a single side sewer, the hearing examiner found that the existing sewer service to both buildings predates Ladder Properties' purchase of the subject property and that Ladder Properties' renovations did not alter the sewer connection for either structure. There was no evidence that Ladder Properties added plumbing fixtures or any new uses to the existing sewer line. Based on the plain language of the cited provisions—SMC 13.04.120 and SMC 13.04.160(A)—the hearing examiner did not uphold the citations for sewer code violations. Similarly, based on the unambiguous language of the City's codes, the hearing examiner did not uphold the citation for violation of water regulation SMC 13.12.020(A) that was based on the two residences' shared use of a single water meter and/or single connection to the municipal water supply. Ladder Properties did not alter or add water service connections to either building, or make any changes to the pre-existing water lines that served the two dwelling units.

The hearing examiner found the zoning code violation had been ongoing for 133 days and imposed a total penalty of $33,250 under SMC 17.05.100(E).[9]

_____

[9] SMC 17.05.100(E) provides that violations of Title 17 incur a penalty of $250 and that each day the violation continues is a separate infraction. Though SMC 17.05.100 has been

Ladder Properties appealed to the superior court under LUPA, chapter 36.70C RCW.[10] The City filed a cross-petition, challenging the hearing examiner's findings that there were no sewer or water code violations. Following a hearing, the superior court denied Ladder Properties' petition and granted the City's petition, affirming in part as to the hearing examiner's decision on the zoning code violation but reversing in part as to the hearing examiner's decision not to uphold the sewer and water code violations. The superior court determined that the hearing examiner's imposition of monetary penalties against Ladder Properties for the zoning code violations "shall remain in effect" and did not impose additional monetary penalties "for Ladder Properties' violation of the sewer and water regulation provisions of the [SMC]."

Ladder Properties appeals.

DISCUSSION

Standard of Review

LUPA governs judicial review of administrative land use decisions. Fall City Sustainable Growth v. King County, 34 Wn. App. 2d 383, 398, 568 P.3d 1129, review denied, 5 Wn.3d 1013, 577 P.3d 378 (2025). "[A]n appellate court stands in the shoes of the superior court and reviews the administrative record." Klineburger v. King County Dep't of Dev. & Env't. Servs. Bldg., 189 Wn. App. 153, 163, 356 P.3d 223 (2015). This court's review is limited to the record that was before the City of Snoqualmie's hearing

---

amended since the hearing examiner's decision, the relevant language has remained the same. See Snoqualmie Ordinance 1305, § 1 (2025). We therefore refer to the current version of the ordinance.

[10] In its LUPA petition, Ladder Properties stated that it filed the petition "by and through its undersigned counsel, and on behalf of interested party, Fiona Soileau."

examiner. See Seven Hills, LLC v. Chelan County, 198 Wn.2d 371, 384, 495 P.3d 778

(2021).

There are six standards for relief from an administrative land use decision under

LUPA. Relief will be granted if Ladder Properties establishes:

> (a) The body or officer that made the land use decision engaged in unlawful procedure or failed to follow a prescribed process, unless the error was harmless;

> (b) The land use decision is an erroneous interpretation of the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise;

> (c) The land use decision is not supported by evidence that is substantial when viewed in light of the whole record before the court;

> (d) The land use decision is a clearly erroneous application of the law to the facts;

> (e) The land use decision is outside the authority or jurisdiction of the body or officer making the decision; or

> (f) The land use decision violates the constitutional rights of the party seeking relief.

RCW 36.70C.130(1).

Here, Ladder Properties challenges the superior court's decision under standards

(b), (c), (d), and (e).[11]

_____

[11] The City asserts that Ladder Properties did not challenge below the hearing examiner's decision under RCW 36.70C.130(1)(e) and thus waived this basis for relief on appeal to this court under RAP 2.5(a). The record supports that Ladder Properties raised the issue of the hearing examiner's authority in its opening brief to the superior court. This court has also interpreted the language of RAP 2.5(a)(1), which permits matters of a trial court's subject matter jurisdiction to be raised for the first time on appeal, to include administrative tribunals. See Inland Foundry Co. v. Spokane County Air Pollution Control Auth., 98 Wn. App. 121, 123, 989 P.2d 102 (1999); see id. at 123-24 ("Without subject matter jurisdiction, a court or administrative tribunal may do nothing other than enter an order of dismissal.") (citing Crosby v. County of Spokane, 137 Wn.2d 296, 301, 971 P.2d 32 (1999)).

The standards in subsections (b) and (e) are questions of law that we review de novo. Cingular Wireless, LLC v. Thurston County, 131 Wn. App. 756, 768, 129 P.3d 300 (2006). We are not required under standard (b) "to give complete deference, but rather, 'such deference as is due.'" Wash. State Dep't of Transp. v. City of Seattle, 192 Wn. App. 824, 838-39, 368 P.3d 251 (2016) (quoting Ellensburg Cement Prods., Inc. v. Kittitas County, 179 Wn.2d 737, 753, 317 P.3d 1037 (2014)). To this end, "the law does not require strict construction in favor of the landowner. So long as the proposed use is within the scope of the ordinance, a zoning ordinance is construed to effectuate its plain purpose and intent."[12] Dev. Servs. of Am., Inc. v. City of Seattle, 138 Wn.2d 107, 117, 979 P.2d 387 (1999).

Generally, courts give deference to an agency's interpretation of an ambiguous ordinance. Citizens to Preserve Pioneer Park, LLC v. City of Mercer Island, 106 Wn. App. 461, 475, 24 P.3d 1079 (2001); see Dev. Servs., 138 Wn.2d at 117. But, under RCW 36.70C.130(1)(b), we do not defer to the City's interpretation if it conflicts with the plain language of the land use regulation. See Wash. State Dep't of Transp., 192 Wn. App. at 839 (citing Waste Mgmt. of Seattle v. Utils. & Transp. Comm'n, 123 Wn.2d 621, 628, 869 P.2d 1034 (1994)). "When a statute or ordinance is unambiguous, construction is not necessary as the plain meaning controls." McTavish v. City of Bellevue, 89 Wn. App. 561, 565, 949 P.2d 837 (1998).

---

[12] Ladder Properties avers in its opening and reply briefs that zoning ordinances must be strictly construed in favor of property owners. This proposition has been previously rejected by Washington courts that have addressed the cases that Ladder Properties relies upon. See Dev. Servs., 138 Wn.2d at 117 (discussing Mall, Inc. v. City of Seattle, 108 Wn.2d 369, 378, 739 P.2d 668 (1987)); Milestone Homes, Inc. v. City of Bonney Lake, 145 Wn. App. 118, 127-28, 186 P.3d 357 (2008) (discussing Sleasman v. City of Lacey, 159 Wn.2d 639, 643 & n.4, 151 P.3d 990 (2007); Dev. Servs., 138 Wn.2d at 117).

RCW 36.70C.130(1)(c) requires a factual determination that we review for substantial evidence. Cingular Wireless, 131 Wn. App. at 768. Substantial evidence is evidence sufficient to persuade a fair-minded, rational person of the truth of an asserted fact. Id. In reviewing a sufficiency of the evidence challenge under standard (c), "we view facts and inferences in a light most favorable to the party that prevailed in the highest forum exercising fact-finding authority." Phoenix Dev., Inc. v. City of Woodinville, 171 Wn.2d 820, 831, 256 P.3d 1150 (2011). "Unchallenged findings of fact are verities on appeal." Seven Hills, 198 Wn.2d at 384.

Under subsection (d), a "clearly erroneous" determination requires this court to apply the law to facts. Cingular Wireless, 131 Wn. App. at 768. "An application of law to the facts is 'clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" Whatcom County Fire Dist. No. 21 v. Whatcom County, 171 Wn.2d 421, 427, 256 P.3d 295 (2011) (internal quotation marks omitted) (quoting Norway Hill Pres. & Prot. Ass'n v. King County Council, 87 Wn.2d 267, 274, 552 P.2d 674 (1976)). We defer to the hearing examiner's factual findings in making this determination. Cingular Wireless, 131 Wn. App. at 768.

Zoning Code Violation

Ladder Properties contends that the hearing examiner failed to apply state law in finding that the conversion of the property's two residences into condominium units constituted a zoning code violation under SMC 17.15.040(D)(1). Ladder Properties argues that the City's prohibition of condominium ownership of the residential units violates statutory protections under the WUCIOA and the GMA. As this issue requires

15

an application of law to the facts, we review it under the "clearly erroneous" standard under RCW 36.70C.130(1)(d).

Generally, municipalities have constitutional authority to enact regulations as an exercise of their police power. WASH. CONST. art. XI, § 11; see HJS Dev., Inc. v. Pierce County, 148 Wn.2d 451, 476-77, 61 P.3d 1141 (2003). Article XI, section 11 of the Washington Constitution provides that "[a]ny county, city, town or township may make and enforce within its limits all such local police, sanitary and other regulations as are not in conflict with general laws." But a municipality may not enact an ordinance that is preempted by the legislature's express intent to occupy the field or that conflicts with state law. Cannabis Action Coal. v. City of Kent, 183 Wn.2d 219, 225-27, 351 P.3d 151 (2015).

Here, Ladder Properties does not argue that the WUCIOA or GMA occupies the field of residential zoning regulations. Rather, Ladder Properties argues that the City's purported interpretation of its R-C zone ordinances conflicts with statutory restrictions on the local regulation of condominiums and ADUs under RCW 64.90.025 and RCW 36.70A.681. "'In determining whether an ordinance is in conflict with the general laws, the test is whether the ordinance permits or licenses that which the statute forbids and prohibits, and vice versa.'" City of Tacoma v. Luvene, 118 Wn.2d 826, 834-35, 827 P.2d 1374 (1992) (internal quotation marks omitted) (quoting Bellingham v. Schampera, 57 Wn.2d 106, 111, 356 P.2d 292 (1960)). "The conflict must be direct and irreconcilable with the statute, and the ordinance must yield to the statute if the two cannot be harmonized." Id. at 835. An ordinance is presumed constitutional, and the challenger assumes the heavy burden to establish unconstitutionality. Rabon v. City of Seattle, 135

Wn.2d 278, 287, 957 P.2d 621 (1998). We review de novo the question of whether a municipal ordinance conflicts with state law. City of Spokane v. White, 102 Wn. App. 955, 961, 10 P.3d 1095 (2000); see Cannabis Action Coal., 183 Wn.2d at 226.

The interpretation of statutes and ordinances is also a question of law reviewed de novo. Whatcom County Fire Dist., 171 Wn.2d at 427. "We interpret ordinances using the same rules of construction we employ for statutes." SkyCorp Ltd v. King County, 29 Wn. App. 2d 832, 840-41, 543 P.3d 223, review denied, 3 Wn.3d 1008, 551 P.3d 443 (2024). This court's primary aim is to ascertain and give effect to the intent of the legislature. Nat'l Elec. Contractors Ass'n v. Riveland, 138 Wn.2d 9, 19, 978 P.2d 481 (1999). We start with the statute's plain meaning, which is gleaned from the ordinary meaning of the statute's language and the statutory context and scheme in which that language is found. Lake v. Woodcreek Homeowners Ass'n, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010). "If the statute is unambiguous after a review of the plain meaning, the court's inquiry is at an end." Id. "[C]ourts retain the ultimate authority to interpret a statute." Faben Point Neighbors v. City of Mercer Island, 102 Wn. App. 775, 778, 11 P.3d 322 (2000).

In 2018 the legislature enacted the WUCIOA, which automatically applies to homeowners' associations created on or after July 1, 2018. RCW 64.90.360(2)(a); Landesberg v. Fairway Vill. Homeowners Ass'n, 30 Wn. App. 2d 660, 666, 546 P.3d 502 (2024) (citing former RCW 64.90.075 (2019), which has since been recodified as RCW 64.90.360 by LAWS OF 2024, ch. 321, § 510); see RCW 64.90.010(10).

RCW 64.90.025[13] provides in part:

---

[13] The legislature made amendments to RCW 64.90.025 effective July 27, 2025. Because the 2025 amendments did not alter the relevant language, we cite to the current

(2) A <u>zoning</u>, subdivision, <u>or other land use</u> statute, <u>ordinance</u>, or <u>regulation may not prohibit the condominium</u> or cooperative <u>form of ownership or impose any requirement upon a condominium</u> or cooperative or miscellaneous community <u>that it would not impose upon a physically identical development under a different form of ownership</u>. …

(3) Chapter 58.17 RCW [that regulates the subdivision of land] does not apply to the creation of a condominium or a cooperative. This chapter must not be construed to permit the creation of a condominium or cooperative or miscellaneous community on a lot, tract, or parcel of land that could not be sold or transferred without violating chapter 58.17 RCW.

(4) Except as provided in subsections (1), (2), and (3) of this section, this chapter does not invalidate or modify any provision of any building, zoning, subdivision, or other statute, ordinance, rule, or regulation governing the use of real estate.

(Emphasis added.)

The GMA, enacted in 1990, is intended to address concerns related to "uncoordinated and unplanned growth" in Washington. RCW 36.70A.010. The GMA "requires local planning to take place within a framework of state goals and requirements." RCW 36.70A.3201. The GMA's goals include encouraging urban area development, reducing rural sprawl, planning for and accommodating affordable housing, promoting a variety of residential densities and housing types, and encouraging the preservation of existing housing supply. RCW 36.70A.020(1), (2), (4). In 2023 the legislature enacted RCW 36.70A.681 under the GMA. LAWS OF 2023, ch. 334, § 4. RCW 36.70A.681 sets forth certain restrictions on the local regulation of ADUs as an affordable housing option, including in single-family zones where single-family detached housing is the predominant land use. See LAWS OF 2023, ch. 334, § 1; RCW

---

version of the statute. Compare LAWS OF 2019, ch. 238, § 202 with LAWS OF 2025, ch. 208, § 4 (adding language that requirements under RCW 64.90.025(2) "include, without limitation, any permitting process such as a binding site plan under RCW 58.17.035 or hearing examiner proceeding under RCW 35A.63.170").

36.70A.030(42); see also RCW 36.70A.680 (referring to RCW 36.70A.681). Subsection (1)(k) provides:

> A city or county may not prohibit the sale or other conveyance of a condominium unit independently of a principal unit solely on the grounds that the condominium unit was originally built as an [ADU].

RCW 36.70A.681(1)(k).

Here, the City's basis for the zoning code violation is directly prohibited by the plain language of RCW 64.90.025(2) of the WUCIOA. The hearing examiner was tasked with the question of whether the City established that Ladder Properties violated the residential district regulation of SMC 17.15.040(D)(1), which provides that "[e]xisting legal lots created prior to the establishment of the R-C district can be developed with one single-family dwelling, but cannot be further subdivided." The City does not contend that Ladder Properties improperly subdivided the lot or modified the physical development of the property. The City maintains that the change in the property's form of ownership to a condominium transformed the ADU's use into a second primary single-family dwelling in violation of SMC 17.15.040(D)(1) under the zoning code. As such, the City seeks to frame its position as concerning land use and not ownership.

The City fails to point to any express language in the zoning code to support that a change in the ADU's ownership constituted a change in its use, which the City otherwise concedes was a residential use permitted under the code. The City acknowledged below that the zoning code does not require a landowner to submit a declaration of condominium for the City's consideration. The R-C zoning ordinances are devoid of any mention of condominium or common ownership developments.

The administrative record supports that the City's position solely hinged on community development director Arteche's opinion that the sale of the ADU as a condominium unit is not a permitted "use" under the zoning code. According to Arteche, no zoning code violation exists but for the property's shared condominium ownership. The City submits that the condominium association must be dissolved to remedy the zoning code violation.

The City's position regarding a change in the ADU's use is not supported by the language of the zoning code and the City's action to prohibit the homeowners from sharing ownership of the physically unchanged property through a condominium ownership structure is plainly forbidden by RCW 64.90.025(2). We further observe that the City's restriction against the separate ownership of the ADU as a condominium unit directly frustrates the legislature's intent to promote ADUs as a source of affordable homeownership as advanced by the statutory restriction on the local regulation of ADUs under RCW 36.70A.681(1)(k) of the GMA. See LAWS OF 2023, ch. 334, § 1(1)(b), (c), (2); RCW 36.70A.020(4).

Though we must defer to the City's reasonable interpretation of the zoning code if the code is ambiguous under RCW 36.70C.130(1)(b), we do not defer to the City's invention of regulations where they do not exist. See Milestone Homes, Inc. v. City of Bonney Lake, 145 Wn. App. 118, 126-29, 186 P.3d 357 (2008); Wash. State Dep't of Transp., 192 Wn. App. at 839. And any deference, to be due, must be in the bounds of state law. See Faben Point Neighbors, 102 Wn. App. at 781-82; City of Tacoma v. Franciscan Found., 94 Wn. App. 663, 670, 972 P.2d 566 (1999).

We conclude that Ladder Properties has met its burden under LUPA by showing that the hearing examiner erroneously applied the law to the facts[14] under RCW 36.70C.130(1)(d) and, by extension, that the hearing examiner's decision is not supported by substantial evidence under RCW 36.70C.130(1)(c). Accordingly, the superior court erred in affirming the hearing examiner's finding that Ladder Properties violated the City's zoning code.

Sewer and Water Code Violations

Similar to the zoning code violation, Ladder Properties contends that the City's reliance on the property's condominium form of ownership as the basis for the cited sewer and water code violations impermissibly conflicts with RCW 64.90.025(2), which forbids the City from "impos[ing] any requirement upon a condominium … that it would not impose upon a physically identical development under a different form of ownership." Ladder Properties asserts that the hearing examiner properly determined that the City failed to establish that Ladder Properties changed the preexisting use of the property's sewer or water facilities in violation of sewer and water regulations.[15]

---

[14] As to its request for relief under RCW 36.70C.130(1)(e), Ladder Properties indicates in its opening brief that the hearing examiner exceeded its jurisdiction by finding a violation of the zoning code in contravention of state law. The hearing examiner's failure to consider applicable state law in exercising its jurisdictional authority is not synonymous with the hearing examiner's decision being outside of its authority or jurisdiction as contemplated by RCW 36.70C.130(1)(e). See Durland v. San Juan County, 174 Wn. App. 1, 10 n.6, 298 P.3d 757 (2012) ("[T]he hearing examiner's authority is limited to that granted by the creating body.").

[15] We reject the City's claim that Ladder Properties did not sufficiently brief its argument regarding the issue of the sewer and water code violations to warrant appellate review. In addition to assigning error to the superior court's reversal of the hearing examiner's decision, Ladder Properties substantively defends the hearing examiner's decision as a matter of state law. See Stiles v. Kearney, 168 Wn. App. 250, 260, 277 P.3d 9 (2012) ("[T]echnical violations of the Rules of Appellate Procedure do not per se bar our review … [a]nd we may review the merits of an issue when the nature of that challenge is clear in the appellant's brief.") (citing RAP 1.2(a)).

A party who files a LUPA petition at superior court challenging the hearing examiner's decision also bears the burden to show that the hearing examiner erred on appeal in this court, even if that party prevailed on its LUPA claim at the superior court. Quality Rock Products, Inc. v. Thurston County, 139 Wn. App. 125, 134 & n.3, 159 P.3d 1 (2007). Therefore, because the City petitioned the hearing examiner's decision under LUPA as to the sewer and water code violations, the burden stays with the City to show that one of the enumerated errors under RCW 36.70C.130(1) provides relief from the hearing examiner's decision. See City of Federal Way v. Town & Country Real Estate, LLC, 161 Wn. App. 17, 23, 36, 252 P.3d 382 (2011). In its cross-petition to the superior court, the City requested relief under RCW 36.70C.130(1)(b) and (d), arguing that the hearing examiner erroneously interpreted the law and erroneously applied the law to the facts. In its briefing to this court, the City does not explicitly set forth a standard of relief under RCW 36.70C.130(1) but maintains its position that Ladder Properties' conversion of the two residential structures into separately owned condominium units created two single-family dwellings in violation of municipal sewer and water use regulations.

Regarding the sewer code, the City argues that Ladder Properties violated SMC 13.04.160(A), which states that "[a] single side sewer shall be provided for every building unless the connection of more than one building to a single side sewer is approved by the utilities director prior to the construction of such side sewer."[16] The City did not present evidence that Ladder Properties added any new use to the property's existing sewer line or otherwise altered the sewer connection for either residence.

---

[16] The City's brief does not specifically address the additional cited violation of sewer regulation SMC 13.04.120, which, as noted above, provides the City's mandated procedure to acquire a side sewer permit.

According to the City's witness, wastewater supervisor Holmes, the side sewer's use was impermissibly changed when Ladder Properties changed the property's form of ownership to a condominium form of ownership.

The only part of the administrative record that the City cites in its brief to this court is Holmes' testimony that the sewer code, referring to SMC 13.04.170,[17] applies to facilities regardless of when they were constructed because "it's an issue [of] public health." This is not responsive to the issue of whether the City established that Ladder Properties violated sewer regulations SMC 13.04.160(A) or SMC 13.04.120 as cited.[18] Because the City's sewer use regulations do not and cannot impose a requirement on the property based on its form of ownership as a shared condominium structure, the hearing examiner did not err in determining that the City failed to establish that Ladder Properties violated the sewer code. See RCW 64.90.025(2).

---

[17] SMC 13.04.170 states:
Old side sewers, including septic tank lines, may be used only when they are found on examination and test by the sewer superintendent to meet all requirements of this chapter. The owner or his agent shall demonstrate to the sewer superintendent that no connection to such side sewer or septic tank line exists which conveys any material prohibited by SMC 13.04.420 through 13.04.500.

[18] For this same reason, the cases that the City cites for the proposition that a nonconforming or preexisting use of a property does not insulate its owner from health or safety regulations are not responsive to the issue of whether the City established that Ladder Properties violated sewer regulations SMC 13.04.160(A) or SMC 13.04.120, or water service regulation SMC 13.12.020(A) as discussed below. See City of Seattle v. Hinckley, 40 Wash. 468, 471, 82 P. 747 (1905); Christianson v. Snohomish Health Dist., 133 Wn.2d 647, 663-64, 946 P.2d 768 (1997), abrogated on other grounds by Yim v. City of Seattle, 194 Wn.2d 682, 451 P.3d 694 (2019); Thomsen v. King County, 39 Wn. App. 505, 516, 694 P.2d 40 (1985); Rhod-A-Zalea & 35th, Inc. v. Snohomish County, 136 Wn.2d 1, 9-10, 15-16, 959 P.2d 1024 (1998). The City did not issue a notice for a violation of sewer regulation SMC 13.04.170. The question of whether a violation of that regulation occurred is thus not before us. See Wenatchee Sportsmen Ass'n v. Chelan County, 141 Wn.2d 169, 176, 4 P.3d 123 (2000) ("In reviewing an administrative decision, an appellate court stands in the same position as the superior court.").

Finally, the City fails to show that Ladder Properties violated water service regulation SMC 13.12.020(A), which provides that "[a]ll residences and business buildings shall be separately metered and connected to the municipal water supply system, and shall have a separate shut-off; provided, there may be a single connection for multiple-dwelling …. A separate connection charge shall be made for each such connection." City building official Cooper solely grounded the cited water code violation on the conversion of the rear residence into a condominium unit. The City does not challenge the hearing examiner 's finding that Ladder Properties did not alter the water service connections or water lines to either of the residential units.

The City's imposition of requirements under sewer and water use regulations because of the subject property's conversion into a condominium form of ownership is not supported by the plain language of the regulations at issue and is plainly forbidden by RCW 64.90.025(2). The City fails to show that the hearing examiner misconstrued the law or misapplied the law to the facts. Because the City has not met its burden to show it is entitled to relief from the hearing examiner's decision under LUPA, we reverse the superior court and affirm the hearing examiner's decision to not uphold the sewer and water code violations.[19]

CONCLUSION

In all respects, we reverse the superior court's judgment dismissing Ladder Properties' LUPA action. We reverse the hearing examiner's decision affirming the zoning code violation and reinstate the hearing examiner's ruling not upholding the sewer code and water code violations. Because the City does not prevail, we deny its

---

[19] Because we reverse the superior court's order in its entirety, we need not address Ladder Properties' argument that the imposed penalty was an unconstitutionally excessive fine.

request for attorney fees as a prevailing party on appeal under RCW 4.84.370 and need

not address whether that statute authorizes such fees in the instant matter.

_Coburn, J._

WE CONCUR:

_Feldman, J._                    _Mann, J._